Good morning, Your Honor. I'm David Gauntlet for the appellant, ORAFIN-OROAMERICA. I'd like to reserve five minutes for rebuttal. Your Honor, I believe this is a case where, if you look carefully at the fact allegations, you can deduce a claim of true libel under the broad potentiality standard applicable under California law that would only limit such an inference of true libel to situations where it would be far-fetched and tenuous. And those very words appear in a fine decision authored by Judge Swarzer in 1988, the Vista Medical Supply decision. It is also clear that a corporation can libel, truly libel, another corporation, that it is not a remedy or a tort limited to what's called trade libel or business libel. Indeed, the Vagod Corp v. ABC case, 25 Cal 3rd, 763 at 770, 1979 decision by the California Supreme Court states, in California, a corporation's right and redress against defamation is well established. It happens that there are two important cases that occurred after briefing in this matter that were the subject of 28 J letters. One submitted on 5906 addressing the NVIDIA case, a decision by a district court in Illinois, which was against Federal under identical policy language, under identical facts. And the court there found a duty to defend was compelled, rejected all Federal's arguments that are analogous to those raised here, and applied both California and Illinois law. The court did distinguish the Orphan case. It was brought to its attention by Federal's counsel in its then unpublished on electronic form, as well as the court's denial on reconsideration. The court attempted to distinguish that case because it found that there was insufficient evidence of fact allegations as evidenced in Or-America. That's because the court did not look at the full record. It looked at what Judge Matz had found regarding libel. The full record would show that this case is actually a better case than NVIDIA, and that had the standard as applied by NVIDIA been applied to our facts, a defense would have been compelled. In that respect, I'll call your attention to allegations in the first counterclaim at paragraph 35, Or-America has made false and misleading factual misrepresentations regarding alleged patent protection of its supreme value rope chain. Very similar to what was at issue in the NVIDIA case where there were allegations that the proprietary rights of the parties were implicated. NVIDIA relied on the line of Seventh Circuit decisions that had found that the act of misstating your patent rights could be defamatory to the party that was so accused. One of the cases it cited, Republic Tobacco v. North Atlantic at 381 F3rd 717 at 728, affirmed a judgment against the defendant for defamation under Illinois law where the defendant falsely claimed that the plaintiff was violating its patent rights. So if you misstate the patent rights of another to their detriment and tell customers of that party that they are, in fact, running afoul of your own patents, you can, in fact, defame it because you injure its reputation in the community. If you look at further allegations in the complaint, it's quite clear that they are both allegations that go beyond mere disparagement, which is also factually alleged. Thus, paragraph 55 of the first counterclaim states, DNW has been injured and damaged in its business, property, goodwill and reputation, and reputation, not just in the products. 60 says, or America's acts are likely to cause injury to DNW's business reputation in violation of the common law of the State of California. Paragraph 45 of the patent counterclaims that, as a result of or America's actions, DNW is substantially injured in its business, property, goodwill and reputation. Now, it's not the most artful series of complaints. If someone was trying to trick out a claim for true libel as well as trade libel, but you've got to recognize that they're not trying to plead into coverage, they're just pleading what they were upset about. And so it's this Court's job to deduce whether libel might be implicated. I'd also note that the 11th cause of action, which states and is labeled common law libel, is joined by the 8th cause of action in the counterclaim for injury to business reputation, a separately stated claim that talks about business reputation. So when you combine all those elements and you apply the appropriate California standard, I think you'll find libel alleged. Indeed, Judge Maps himself conceded that the elements of libel seemed to have been plaid. He had other concerns, but that's something that he actually seemed to agree with. Indeed, at the end of the second order for reconsideration, and we got oral argument on reconsideration, a rare event in a Federal court these days, and the last statement of the judge was basically, I'm not real sure about what I'm doing here. We need to have this sent up to the Ninth Circuit. He called the law a mess. He was unclear what to do, et cetera. He's looking for some guidance, and I think that the guidance is readily available if you just look at some of the misstatements that were made by Federal as to what the law is. It said without any authority that the law that I just cited to you in Illinois is not the law in California. Well, that's not what the NVIDIA court said when it looked at that same issue and found against Federal. It is also not what Judge Sforger suggested in the Vista Medical Supply case when he cited favorably CNAVC Board at 176 Caleb 3rd 598-608 for the proposition that those insurance policies there that misrepresented the business property and rights possessed by the plaintiff to persons with whom plaintiffs did business stated a claim for libel and slander. That's a very analogous precedent. Even more recently, and the subject of a subsequent 531-0628 J letter is a decision this Court, the PESCO Court decision at 406 F 3rd 1102-1104, and the Court there found defamation based on the same allegations and business disparagement. In other words, a business disparagement claim and a defamation claim arose based on the same allegations that California Sense injured PESCO's reputation in sales by falsely representing to sales representatives and competitors in the air freshener industry that PESCO infringed upon California Sense air freshener trade dress. So we have all of this authority that belies the statements that federal made that California and Illinois part company on the approach here. Good solid case law. Another fine jurist, Judge Krosky, from the Second District Court of Appeals, in the Lamb case cited favorably the Amerisher decision from applying Illinois law for the proposition that disparagement is in the interest of one and not implicated when you question the IP rights of another. The Court's citation to Amerisher is important because that case independently found under Illinois law, that when you question another's IP rights, that's both defamation and disparagement. He didn't reach defamation. He didn't need to, but he cited that decision that reached both issues favorably, which I suggest, given the law I cited, leads to a reasonable finding that you have libel asserted. Moving on to the intellectual property exclusion, it's a troubling exclusion because you have to read in the term personal injury, which is a defined term, into it to make it sensible. And I've done that, and I'll read what I think it says if you actually read all the elements. It's a little queer, actually. This insurance does not apply to, and here's from the definition of personal injury, injury arising out of publication of material that libels an organization arising out of publication of written statements which are claimed as an infringement, violation, or defense of patent, copyright rights, or laws. So the operative event is as it should be, not the injury, but it is the offense. And the offense here, libel, has to arise out of the publication of written statements, and those statements have to be claimed as an infringement or violation. We were not sued for patent infringement in the counterclaim as at issue here. We were sued for a variety of unfair competition claims using that term quite broadly in character, patent misuse, false advertising, common law, et cetera. And patent misuse is not a violation of patent law. It is a form of unfair competition, and there is clear precedent on that issue. And I'll note in our reply brief, we pointed out that Federal did not take issue with the cases we cited for the proposition that patent misuse claims are forms of unfair competition, not violations of patent law. Indeed, the Mallett-Drott, M-A-L-L-I-N-C-K-R-O-D-T, Inc. Metaparty case, 976 F. 2nd, 700 at 704 from the Federal Circuit in 1992, said the concept of patent misuse arose to restrain practices that did not in themselves violate the law, but that drew anti-competitive strengths from the patent right and were deemed to be contrary to public policy. Just as there is a key case decided after briefing vis-à-vis true libel, there is also one cited after briefing vis-à-vis the applicability of an analogous exclusion. Judge Ware, in the Seagate decision, which was the subject of our 515-0628-J letter, found that when you focused on the claimed as language that I just read to you, that that would avoid applicability of the exclusion in an analogous setting. Now, Judge Matz had some difficulties because he relied on a decision of Judge White, and Judge White came to the correct decision in KLA-10-COR at 2003 U.S. District Lexus 10456-18, but he did so in a way that involved a little bit of a misreading of the policy language. In trying to construe the exclusion, he said that it provides as follows. Plaintiff's insurance policy does not apply to injury related to the publication or utterance of statements which is claimed as an infringement. He was dealing with a case there where you had a patent suit and mixed action with claims also for disparagement that were factually nested within an interference claim. And he found that the statements that constituted the disparagement, that the company was going down tubes, were distinct in character from the patent claims. The exclusion didn't apply in all possible worlds. Therefore, a defense properly rose. Because he focused, however, on the word injury related to the publication, he misstated somewhat the exclusion, which was not true in Judge Ware's subsequent opinion. The reason he misstated it is he didn't read in the in-quote language personal injury into the applicable policy, and he also jumped to the exclusion without first looking at the offense. You have to have the offense, meet the offense, then the exclusion applies to the offense. And so if you read the language again, this insurance does not apply to injury arising out of publication of material that libels an organization arising out of publication of written statements which are claimed as an infringement violation or defense. He dealt with the defense aspect, but the defense aspect here would not be implicated because what we did to defend against the libel claims was not something that would be defending against a violation of patent law. We would not have the same statements that would defend against a patent or copyright claim as defense to a patent claim. Frankly, I think if you look at the standard that Judge Krausky enunciated in B&E Convalescence Center at 8 Cal 4th, 7899 to 100, that a reasonable purchaser of the policy would not realize that the risk is excluded and thus would reasonably expect the insurance to furnish a defense, a defense is required, it applies. Because I query how can a policyholder seeking to evaluate the limits of its coverage for defamation as a form of personal injury understand what the scope of this policy is, given the kind of convoluted anguish not only about infringement and violation but also defense, and I think that it really doesn't meet the McKinnon v. Truck Insurance Exchange, 31 Cal 4th, 635-648 standard that the exclusionary clause must be conspicuous, plain and clear. And the Court therein noted we are not required to select a correct interpretation from those suggested. So since the obligation under the Lamb decision by Judge Krausky is to prove through conclusive evidence that the exclusion applies in all possible worlds, I don't find that that standard can be satisfied herein. Also, I note in the Lamb decision, another underpinning of this analysis is what is the nature of an offense-based coverage to start with? He notes that like advertising injury, personal injury is a term of art that describes coverage for certain enumerated offenses that are spelled out in the policy. Coverage for personal injury is not determined by the nature of the damages sought in the action against the insured, but by the nature of the claims made against the insured in that action. Coverage is triggered by the offense, not the injury or damage. Judge Matz thought injury was important. Injury need only arise out of the offense. That's a distinction that gets you into trouble when you try to apply the exclusion and say I wonder if there's some link between injury and the statements. Well, even if there is, it doesn't track the policy. The triggering event is the insured's wrongful act, not the resulting injury to the third party claimant. So since it's an offense-based cover, since the reason we're going to get coverage is because there's a liable claim, because we claimed that D&W was infringing our patent rights to the marketplace and it cost them business. Our defense of those claims is not going to involve anything that will fall within the scope of that exclusion. You're down to under four minutes. Do you want to reserve some time? Yes. Thank you, counsel. Good morning, Your Honors. May it please the Court. I am Paul White, counsel for Federal Insurance Company. One of the factors that a court takes a look at when it considers does an insurer have an obligation to defend a case is what is presented. And in California, that can be both what is contained in the allegations of the operative any extrinsic evidence. What is obviously missing from this case is an allegation or a cause of action of libel. The insured is seeking coverage on the basis that it believes the libel insuring agreement of the policy obligates Federal Insurance Company to defend. It gets there not by asserting here's the cause of action, here is the allegation, here is the extrinsic evidence, but specifically is saying that it would like you as the court, through inference and innuendo, to come up with that cause of action on your own. Well, it's sort of California law, though, isn't it, in a sense? I mean, I hate to say that, but California law does not require an independent pleading be set out in the complaint that says libel. You're absolutely right, Your Honor. So we have to decide whether or not the pleadings, irrespective of their label, can be construed as claiming libel in this case, right? Yes, you're right. The determination that you look at is to say, can these pleadings, or even the extrinsic evidence, which some States don't look at, but California says even if you look at extrinsic evidence, could there be an amendment? What do you mean, an amendment? Could there be a potential that an allegation could be included that would fit within libel? Well, what do you make of the district judge's statement that all the elements of libel are found in the pleading? When you read the decision as a whole, Your Honor, what the district judge is saying is that the allegations are for the claim for trade libel, and that California has specifically distinguished a claim of libel, which goes toward the personal nature of something like moral turpitude or amoral conduct, to a trade libel. I don't think that's what the judge said. He said all of the elements of libel are present. He didn't say trade libel. But as he went on in his decision, he specifically distinguished and said this is trade libel, not true libel. Yeah, but he may have been confused in thinking that it had to be one or the other, but wouldn't California law permit an allegation of, a set of allegation of facts to constitute both trade libel and regular libel? It is completely plausible that a complaint can include both libel and trade libel. Well, which element of regular libel isn't present in the pleading? In this particular matter, all that is alleged, you go back, there is a notice to the trade, and there are two letters sent to the QVC shopping network. That is all that's presented here. In neither one of those situations is there a defamatory statement alleged. In the notice to the trade, they simply say, we own these rights, and by the way, we're going to protect them. They don't mention DNW. They don't attack them. In the first letter to QVC, they say, we own eight patents on jewelry. End of story, period. Again, no attack on DNW. In the second letter to QVC, they say, here are three styles being sold. These are in violation. We ask that you cease and desist. That does not rise to a statement, and that's something this Court specifically laid out in the Microtech case in saying, we're not going to go that far in saying that this constitutes defamation. Similarly, in California. But it's not getting to the merits of it. I mean, how do you deal with Jay Lamb? Because you've got, it seems to me under California law, if you can construe the pleadings as alleging that, in a duty to defend case, not a duty to pay case, alleging libel, you're stuck on the duty to defend. And here you've got the district court, as Judge Forger says, saying, you do allege libel. I mean, he says that. And two, if you look at the words of the complaint, they're talking about reputation damage. So then you take that and you look at the letters you're talking about, and three, you take Jay Lamb and that line of cases where it says you can, by saying that this person's an infringer, you are disparaging the company's reputation as well as claiming infringement. It seems to me that's where the case goes. A whole lot of interesting questions, if I can try and hit those one by one. The Jay Lamb decision, the insurance policy at issue was different language. It included coverage for disparaging comments. We don't have that. The Bennett case out of California, among others, Polygram as well, and the Aetna Casualty, specifically say that trade libel and libel are distinct. And Bennett said, in language very similar to the policy at issue here, when you are just insuring libel, when the allegations only involve the property at issue, that is trade libel and does not trigger duty to defend. Counsel similarly referenced the Navidia case. The Navidia decision specifically said, in Orathon, the allegations in an underlying lawsuit did not trigger a duty to defend because the allegedly false statements were directed at the plaintiff's property, some jewelry, and not at the plaintiff's business reputation. This is completely consistent with the California courts. All of the courts that have addressed this question have really been unequivocal in saying when all you are dealing with is property, when all you're dealing with is an allegation of ownership rights to intellectual property, that is not going to translate into some sort of defamation claim. Kennedy. But isn't there language? Aren't there allegations in the complaint to the effect that there's injury to reputation of the corporation? Isn't that in the complaint? The allegations in the complaint reference that, Your Honor, in the context of the letters sent, the notice to the trade and the letters to QVC. Well, what you're saying is maybe the letters aren't sufficient to prove damage to reputation, but it's alleged, isn't it, and isn't that enough for coverage? No. You look at the sufficiency of the allegations contained therein, and Judge Metz did that to a significant degree. What do you mean the sufficiency of the allegations? The allegations do not qualify in any way, shape, or form to be a defamation claim. But that's what they allege a defamation claim, don't they? No, they do not allege a defamation claim. They allege injury to the reputation. They allege a trade libel claim, and that the ---- Well, maybe I'm missing something, but as I understood the difference in trade libel and regular libel, it would be that in a trade libel, the product is disparaged as the element, whereas in a regular libel, the reputation of a person is disparaged. That is correct, Your Honor. That's the key different element between the two. But here, if they're alleging in their complaint that their reputation was disparaged, not just their product, then doesn't that or why doesn't that state a claim for libel  because the only allegation that that is premised upon is the allegation that the notice to the trade and the letters to QVC specifically directed to the product were what caused the purported damages. There is no other allegation at issue, either in the complaint or that was made available through extrinsic evidence. Well, don't those letters and notices state that the DNW is selling a product that is infringing our rights in effect? The notice makes no reference. The notice simply says we own rights and we will protect them. I'm talking about the QVC letters. The QVC letters. There was one letter that said that QVC was selling three styles of necklaces that were in violation of their patent. That's the key, isn't it? That's the nub of the complaint. That is an allegation to focus in on, I suppose. But that's the situation where the microtech court in a passing or palming off situation specifically said we're not going to read in a defamation count simply because there is an allegation of infringement. Right. Well, the palming off is, I think, different from this, though. I mean, pure palming off allegations, I would agree with you, don't rise to the level of a general libel. But if you have palming off plus an allegation of damage to business reputation, then you're getting into an area that's beyond microtech, it seems to me. I would disagree, Your Honor, because I think what microtech is saying is that we're going to look at the nature of the allegation. Is the nature of the allegation going to the product? Is the nature of the allegation going to a personal attack, something about the individual conduct? The allegations here, there is just simply no question but that the allegations here all go to the product. Nothing was. Let me take a different hypothesis. They all relate to the product, but they're not alleging the product is bad or substandard. They're alleging that the product is their intellectual property. So they're questioning the other seller's reputation indirectly, at least. They are questioning ownership of property. But what the California courts have specifically directed this at is saying when you are directing the allegation toward property, it is trade libel. And trade libel does not, if so facto, transmogrify into a defamation claim. Go ahead. Suppose the facts were changed and the letter said to QVC, you're selling stolen property, we know this property is stolen, and we're just putting you a notice that it's our property and it was stolen. Would you say that's enough to damage their reputation? I'm not sure if it would or not, since you're talking about QVC engaging in stolen. Are you saying that the letter would say that Oral America stole the material and engaged in? D&W is selling stolen property. That's what Oral America's letter says. Right. That may be a different situation, Your Honor. To a degree, then, right? I think that that may be a situation where the defense would be extended, because it's not, as is the case here, a situation where you're dealing with the ownership of the property rights. But it is. It is. It's stolen property. And the whole notice relates to property, just like in this case. It's just a little more clearly articulated that it's involved in wrongful conduct. The nature of the allegation that you're referencing contains a specific statement, as I understand what you're saying, that D&W engaged in amoral conduct. There is no such allegation here. The allegation is simply one of ownership or a violation of certain styles being sold on QVC. Let me give you a different hypothetical. Let's assume that we're dealing with somebody who hadn't manufactured the product. And this defendant says, so-and-so is a patent infringer. This other company is a patent infringer. That's all that's in the case. Defamation or not? I don't think that it does rise to defamation, Your Honor. Why? Because I think that you're saying this other company is ‑‑ I'm talking about does that sufficiently allege defamation under California law, not whether it's a successful claim. I don't know, to be honest with you, because what the Bennett case came out and said in the infringing context. Right, but this has nothing to do with any infringer. You're just accusing somebody of being an infringer, and it's a third party who has nothing to do with the product. If you're involved in a situation where all they're doing is alleging an infringer of the product, don't deal with this person. They're a patent infringer. This is a third party. It's a business competitor, but it has nothing to do with this particular product, nothing to do with the infringement. Wouldn't you say that that would satisfy the elements of defamation? You've got a defamatory meaning of the statement. You've got it communicated to third parties. You've got reputation damage at issue. Tell me why that's not defamation. That may be. All right, so why does it make a difference if it's not a third party? Because the allegation here simply went to the allegation that what Oral America did was say, we own these rights, and we're going to protect them. They're not casting aspersions. They're not making a statement. Except that the pleading says business reputation. I mean, we're in a duty to defend, so you have to construe it broadly. It seems to me what you're doing, and you can correct me, but it seems to me what your argument is, well, sure, the complaint alleges libel, it may allege libel, but these statements plainly aren't libel in that sense. And it seems to me that analysis goes to the merits of the claim rather than whether or not a defense is triggered because the allegations have been made. Well, part of it may go to the merits. Part of it does take into account, as you reference, extrinsic evidence, which the parties borrow. Extrinsic evidence, okay, but it only goes to the intent of whether there's a claim, not whether it's a successful claim. But they are allowed to take a look at what the specific notices to the trade and letters did include. And then Judge Metz addressed what you're addressing as well when he looked at the Coit-Drapery and I'm drawing a blank on the name of the other case, when he said I can look at the viability of the action that's being alleged. That's what he said. I'm not sure that was correct, though. Well, I think it is correct. You can't, you can, duty to defend is triggered by frivolous complaints, so you can never look at the merits itself. You can look at the substance of the allegation to see if you're trying to parse together whether or not the allegation has been made. I grant you that. But to say this can't succeed doesn't have anything to do with insurance coverage. Well, I think in the context when you look at saying can we infer an allegation and a cause of action that aren't pled anywhere in the pleadings, that aren't included in any of the extrinsic evidence, he can say what I'm left with is to say could they even do this. And he concluded no, they can't. There wasn't sufficient allegations to rise to a level of defamation. The problem with the QVC letter, I think, is that it's communicated to a third party. Now, in the classic patent infringement case, you've got communications between the two. And I grant you in those cases where there's only communication between the two parties, you don't have, you can't meet the elements of publication in a defamatory, in a defamation case. But here you've got a communication to a third party regarding ownership of rights. And you're saying to the third party by inference, this party's a patent infringer. And, Your Honor, I would state that that's exactly what Bennett came down and said, we are not going to extend the duty to defend, and the reading into a complaint that far, it stretches the policy language, it stretches the law too far to place that burden on insurers. Well, Bennett was a two-party case, wasn't it? Am I wrong on that? There was no communication to third parties. Am I wrong on that? And I don't recall if it involved third party or not. I'm happy to supplement on that if you would like. In the last two minutes here, Your Honor, I would jump to the intellectual property exclusion. And just so we're clear on the record, let me read what that language says. Advertising injury or personal injury arising out of or directly or indirectly related to the actual or alleged publication or utterances of oral or written statements, whether made in advertising or otherwise, which is claimed as an infringement, violation or defense of any of the following rights or laws. Copyright, other than infringement of copyrighted advertising material, patent, trade dress, trade secrets, or trademark or service mark, or certification mark, or collective mark, or trade name, other than trademark or service mark titles or slogans. Judge Metz found, and I would ask that this Court affirm, that the intellectual property exclusion is specifically meant to apply to this situation. You have a claim where the DNW is coming at this and saying, we're entitled to be protected from patent misuse and abuse. That is the intellectual property right at issue and presented in the case. It was directly what Judge Metz came down and said, this fits directly into the holding of KLA 10-Core, where they said, if it fits within the parameters of the intellectual property rights, coverage is precluded. And I would purport that that exclusion is directly applicable here. What was at issue were patent rights, period. You look at the allegations, the notice to trade, the letters to QVC, what they involve are patent rights. That is expressly what this exclusion was meant to apply to, and that should preclude coverage as well. Roberts. Any further questions? Thank you, counsel. Twenty-two seconds to spare. You saved us some time. Thank you. Thank you. Jumping to the IP exclusion first, I think all you have to do is sensitively read the Seagate case, where they rejected the exclusion under very similar language. And it says, National's interpretation of the policy entirely omits the italicized language statement which is claimed as. That's the key aspect of it. That is, according to the general policy's plain text, the patent trade secret exclusion only applies when a statement itself is claimed as a violation of legal rights relating to patent or trade secrets. Because, as Seagate points out, neither Convo or MIT, the claimants in the underlying suit, assert that Seagate's press release themselves constitute a misappropriation of trade secrets or infringement of patent, the Court concludes the exclusion is inapplicable. Our statements themselves were not statements that created liability for any IP claims against us, nor could they. I think Your Honors are right on to look at the Lam decision. Conceptually, there is no distinction, given especially paragraph 60's express and distinct allegations of business reputation. But counsel was right. There is a different policy, different policy language at issue, right? Absolutely. There's no disparagement coverage. But conceptually, if you look at the notion of contacting a third party and saying you don't have patent rights and if you buy from the party you want to buy from, I'll sue you too, that's the same conceptually as libel. It's just a question as to whether the products are the focus or the reputation of the business. If you're the source of infringing products, your reputation is besmirched and libel can arise concurrently with disparagement, as was the case on the facts in the PESCO case, which is in my most recent 28J letter. Again, I'll just go back to 60. And the Court's correct. It's not just what the facts are that may create liability. It's what's pled because it could be a frivolous claim, as it turned out to be here in our view. Or America's acts are likely to cause injury to DNW's business reputation. It says nothing about products in that recitation. The simple fact is a DNW complained that Or America attacked its business practices in statements that impugned the business's honesty by asserting that DNW sold infringing goods in violation of the law. Or America thus took credit for the invention and the sign that it had acquired and it challenged DNW for claiming that it had those rights. The NVIDIA case evidences why Illinois law would find the various assertions in the complaint, even without the business reputation reference enough, to impact a claim for defamation because they go to the capacity to actually hurt another. And again, I'll go back to that Republic Tobacco case affirming judgment against the defendant for defamation under Illinois law where the defendant falsely claimed that plaintiff was violating patent and trademark rights. If I could be very briefly heard in bad faith, we have asked that the Court address whether the conduct here by the plaintiffs. Robertson, Unfortunately, he didn't deal with that, and it's improper surrebuttal I think at this point. Otherwise, we have to allow them a chance to respond. Well, I'll just refer to my papers on that issue then, Your Honor. But I just point out that what happened is the Court was misled, I think, to apply a standard that would be a proper standard here, which is really whether a 12b-6 motion is viable. A lot of district court judges, I find, looking at coverage issues, decide whether a defamation claim is pledged such that it would survive a 12b-6 motion. In their mind, it is not. No duty to defend. Different standard. Potentiality is much broader. The Barnett case says any fact anywhere in the pleadings is sufficient. It distinguishes Bennett. Lamb relies on it, and it explains why defense is due here. Thank you, counsel. The case just heard will be submitted, and we will be in recess. Judge Gould, do you want 20 minutes or 15, which is your? No, even 10 minutes is enough. We'll do 15. We'll adjourn for 10 or for 15 minutes. All rise. The court is in recess for approximately 15 minutes.
judges: Thomas, Gould, Schwarzer